PENICK, tax-collector, *v.* FOSTER, executor.

1. The general rule is that public property and the various instrumentalities of government are not subject to taxation. This immunity rests upon the most fundamental principles of government; being necessary in order that the functions of government be not unduly impeded, and that the government be not forced into the inconsistency of taxing itself in order to raise money to pay over to itself.

2. Constitutions and statutes, in so far as they deal with the subject of taxation, are to be interpreted in the light of the fundamental principles above referred to.

3. A municipality is a mere political division of the State. It is a public corporation, having for its object the administration of a portion of the powers of government delegated · to it for that purpose.

4. A municipal corporation may borrow money to be used for· the purposes of government, or for such other purposes as may be authorized by the constitution and laws, when the power to borrow is delegated in the charter.

5. Bonds issued by a municipal corporation, as evidence of a loan made to it, are instrumentalities of the government· which creates the municipal corporation. Laws providing for the collection of taxes will not be so construed as to authorize the collection of a tax upon such instrumentalities of government, unless there is in the law clear language declaring that such was the intent of the lawmaking power.

6. General terms and expressions in the constitution, or in the statute providing for the collection of taxes, are never allowed their full literal import if the effect of such construction is to require that to be done which the law does not authorize, or to violate a fundamental principle upon which the government is founded and operated.

7. The word "property," in that clause of the constitution of this State which declares, "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax," properly construed, does not require the taxing of public property or any of the lawful instrumentalities of government.

8. There are not, in the tax laws of this State, any terms which expressly declare that the bonds of the State, or its various political subdivisions, are subject to tax, nor any language in such laws which clearly indicates that it was the intention of the General Assembly to subject these instrumentalities of government to taxation, either by the State or any county thereof.

**9.** Bonds issued by a municipal corporation of this State in the hands of a resident of this State are not taxable by this State or any county thereof.

Submitted June 27,—Decided August 9, 1907.

Petition for injunction. Before Judge Lewis. Morgan superior court. March 4, 1907.

Penick, as tax-collector of Morgan county, brought an equitable petition against Foster, as executor, alleging that the defendant had recently received, in payment of the principal and interest on ten municipal bonds of the City of Atlanta, of one thousand dollars each, bearing interest at eight per cent. per annum, the sum of $27,600. The bonds were purchased by the testator of the defendant and deposited in a bank in the City of New York in the year 1880, then being of the value of $10,000. The plaintiff has, in accordance with the law, assessed this property as the property of the testator of the defendant, for the years 1880 to 1904 inclusive, and issued tax executions against the executor for each of these years, the aggregate amount of such executions being $9,512.27. The plaintiff knows of no other property of the testator of the defendant except the money above referred to. The executor is under no bond, is insolvent, and denies the right of the County of Morgan and the State of Georgia to tax the bonds, and refuses to pay the taxes. Unless the executor is restrained from distributing the funds among the legatees of the estate without paying the taxes, the plaintiff, as a tax officer, will be without a legal remedy and will be forced to resort to a multiplicity of suits against the legatees. The prayer is, that a receiver be appointed to take charge of the funds and pay them out under an order of court, and that the executor be enjoined from paying out any of the funds under the will of the testator until he has fully paid off and discharged the tax executions, and for general relief. The defendant, in his answer, alleges that the bonds were purchased by his testator of the fiscal agent of the City of Atlanta in the City of New York, and that they remained in the City of New York until paid off, on February 7, 1905; and the right of the County of Morgan and State of Georgia to tax the bonds is denied. It is alleged that the defendant, before he had any notice of the granting of the restraining order or of the filing of the petition, distributed the funds in his hands among the legatees under the will of his testator. It is alleged, that, shortly after he deposited

the bonds in the bank in the City of New York, his testator died in the State of Maine; that the defendant qualified as executor on August 2, 1880, and had no knowledge of the depositing of the bonds, and never acquired any knowledge of the same until two or three weeks before he collected the amount of the bonds; that he had no knowledge that the assets of his testator included these bonds, and there was nothing among his papers indicating the same. The defendant pleads the statute of limitations of four years, as well as the statute of limitations of seven years, against the collection of the taxes against the bonds. At the hearing the judge refused to grant the injunction prayed for, and stated in his order that the injunction was refused solely upon the ground that the bonds were not taxable by the State and county. The plaintiff excepted.

*George & Anderson,* for plaintiff.

*Samuel H. Sibley,* for defendant.

COBB, P. J. (After stating the facts.) This case was heard on a petition and answer; both being verified by affidavits. There was no other evidence before the judge. The pleadings raised an issue of fact as to whether the funds in controversy were still in the hands of the executor or had been distributed among the legatees. The order of the judge shows that he did not determine this issue of fact. He refused the injunction for the reason that he was of the opinion that the bonds were not taxable by the State and county; and the decision of this question of law is at the foundation of his judgment. Under such circumstances the question for review by this court is whether the judge has correctly decided the question of law upon which he based the judgment refusing the injunction. See, in this connection, *High Shoals Mfg. Co.* v. *Penick,* 127 Ga. 504 (3), (56 S. E. 648); *Hill* v. *Wadley Southern Railway Co.,* 128 Ga. 705 (57 S. E. 795). The single question, therefore, to be determined is whether bonds issued by a municipality of this State are taxable in the hands of a citizen and resident of this State by the State and county. A county is a mere political division of the State. For convenience the State delegates to certain officers within the county the right to exercise certain powers of sovereignty. A municipality is also a mere political subdivision of the State. It is a public corporation having for its object the administration of a portion of the powers

of government delegated to it for that purpose. Civil Code, § 1833. They are mere creatures of the lawmaking power, and may be created and abolished at its will. The extent to which they shall be permitted to exercise the powers of government is, under the constitution, left largely to the discretion of the General Assembly. Within the limits of their charter they may exercise the powers of sovereignty. "The right of taxation is a sovereign right, inalienable, indestructible, is the life of the State, and rightfully belongs to the people in all Republican governments." Civil Code, § 5796. This right may be exercised by the State directly, subject to the limitations in the constitution; and this right may be exercised by the counties and municipalities of the State to the extent that such power is delegated to these political subdivisions, and within the limits fixed by the constitution or laws passed in pursuance thereof. The government, whether it be the State or one of its political subdivisions, is dependent, for the due exercise of its powers, on certain instrumentalities needful and proper in the matter with which it is dealing. Credit is absolutely indispensable to any government, whether it exists in the form of a State government or in the form of the government of one of the political subdivisions of the State. It becomes necessary, in the life of a State, as well as of its political subdivisions, to be able to establish credit in order to carry on successfully and properly the governmental functions. One of the most usual and ordinary methods of using the credit of a government is by the issue of securities and placing them in the markets of the world for sale. The State can borrow money in this way within the limitations of the constitution. The counties may do likewise, and so may municipal corporations. A municipal corporation may not, however, borrow money for any purpose other than the purposes of government, unless such power is expressly delegated in its charter. and such delegation of power is consistent with the provisions of the constitution. Hence, whenever a municipal corporation makes a loan of money, it is either to use the money for the purpose of carrying on the functions of government or to effectuate an enterprise which the General Assembly has, by law passed in pursuance of the constitution, authorized it to engage in. Every loan made by a municipal corporation is therefore in the exercise of the governmental power and to effectuate the governmental object. If a municipal corporation

issues, in conformity to law, a negotiable instrument in order to raise money to effectuate a governmental purpose, the paper issued by it is an instrumentality of government. It is the means resorted to by the governmental officers to effectuate the powers of government. In McCulloch v. Maryland, 4 Wheaton, 316 (4 L. ed. 579), it was held that Congress had the power to incorporate a bank as a proper means of exercising the powers of government given by the constitution, and that, as such bank was an instrumentality of the Federal government, a State in which a branch was located could not levy a tax thereon without violating the constitution. In Weston v. Charleston, 2 Peters (27 U. S.), 449 (7 L. ed. 481), it was held that a tax imposed by the law of a State on notes issued on loans made to the United States was unconstitutional. In Dobbins v. Erie County, 16 Peters (41 U. S.), 435 (10 L. ed. 1022), it was held that a tax imposed upon the office of a captain of a United States revenue cutter, which had the effect to diminish the compensation which he would receive as fixed by Congress, was unauthorized by law. In Banks v. Mayor. 74 U. S. 16, it was held that certificates of indebtedness, issued by the United States to creditors of the government for supplies furnished for carrying on war, were beyond the taxing power of the State. In Van Brocklin v. Tennessee, 117 U. S. 151 (6 Sup. Ct. 670, 29 L. ed. 845), land purchased by the United States at a sale for direct taxes, and afterwards sold, was held not to be taxable so long as it was owned by the United States. See also, in this connection, Burroughs on Taxation, 120. It is also well settled that the United States government can not tax the governmental instrumentalities of the different States. Burroughs on Taxation, 505. In Collector v. Day, 78 U. S. 113 (20 L. ed. 122), it was held that Congress had no power to impose a tax upon the salary of a judicial officer of a State. In Pollock v. Farmers' Loan Co., 157 U. S. 429 (15 Sup. Ct. 673, 39 L. ed. 759), it was held that a tax upon rents or income derived from the interest on bonds issued by a municipal corporation is a tax upon the powers of the State and its instrumentalities to borrow money. In United States v. Railroad Co., 84 U. S. 322 (21 L. ed. 597), a municipal corporation is held to be a portion of the sovereign power of the State, and not subject to taxation by Congress upon its municipal revenues. It may be safely asserted that nothing is better settled

than that securities issued by the government are as much the instrumentalities of the government as other means adopted by it to perform its functions. It is immaterial whether the security be issued by the State, or by a county, or by a municipality. It is, in all cases, an instrumentality of the government. It is issued for the purpose of effectuating those objects for which governments exist. In *City Council* v. *Dunbar, 50 Ga.* 387, Judge McCay says: "It is a question of some doubt whether a State can tax its own bonds. At any rate it is a matter of serious question whether it is right to do so. If a State contracts to pay a fixed interest on its bonds, it is rather a loose compliance with that contract to tax the bond one or two per cent. We will not say a State can not tax its own bonds." In that case it was held that a municipal corporation could not levy a tax on bonds issued by the State unless there was clear language in the charter of the city conferring that power. In *Miller* v. *Wilson, 60 Ga.* 505, it was held that a general tax act of the State would not be so construed as to authorize the assessment and levy of a tax upon State bonds, unless there was clear language declaring that such was the legislative intent. Hence where the act contains, as descriptive of the property subject to taxation, only the words, "the taxable property of this State," the act would be construed not to embrace State bonds owned by a citizen and resident of this State. It is to be noted, in passing, that both of the decisions just referred to were rendered in cases arising prior to the adoption of the constitution of 1877. That instrument declares, "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax." Civil Code, § 5883. This provision of the constitution has been so construed as to declare that all property within the limits of the State is subject to taxation, except such as the constitution expressly authorizes the General Assembly to exempt from taxation. *Georgia Railroad Co.* v. *Wright, 125 Ga.* 589 (54 S. E. 52, 7 L. R. A. (N. S.) 103). The constitution expressly authorizes the exemption of public property. Civil Code, § 5884. Let it be conceded, for the purposes of this case, that the State, either directly or through its counties and municipalities, may tax public securities in the hands of individuals. The question then arises whether the phrase, "all property subject to be

taxed," in the constitution, embraces bonds issued by the State or its political subdivisions. If it does, there is no power to exempt them from taxation. If it does not, the question as to whether they shall be so subjected is a matter left to the discretion of the General Assembly. If a municipal bond is property which the constitution taxes of its own force, and the General Assembly has no authority to exempt the same from taxation, then a county bond is likewise taxable, and, for a similar reason, a State bond itself. If the constitution, by virtue of its own terms, makes such bonds subject to tax, then no other legislation is necessary to provide for the collection of the tax than that which has been enacted for the purpose of collecting taxes upon other property of a similar character. If the tax acts provide machinery ample in its nature to collect taxes on notes and choses in action, such machinery will be ample for the purpose of collecting taxes upon choses in action issued by the State or one of its political subdivisions. *Atlanta National Building & Loan Ass'n* v. *Stewart,* 109 *Ga.* 80 (35 S. E. 73). If the constitution, of its own force, requires the State to collect the taxes upon municipal bonds, by parity of reasoning it requires a county or municipality to collect taxes upon State bonds. If it does not require a municipality to collect the taxes on its own bonds, then it would not require the State to collect the taxes upon the bonds of its municipalities. In *Mayor of Macon* v. *Jones,* 67 *Ga.* 489, it was held that the grant of a power in a charter of a municipality "to tax all property, real and personal, within the corporate limits of the city," would not be construed to include the taxing of its own bonds, in the absence of express authority for that purpose. It is to be noted that this case was decided after the constitution of 1877 was adopted. If a municipal bond is property within the meaning of that term as used in the constitution, and is made subject to taxation by the terms of the constitution itself, such bond is subject to taxation in the hands of a resident of the municipality issuing it, as well as elsewhere in the State. The ruling in the case could not have been made except upon the theory that a municipal bond was not required to be taxed under the constitution. The language of the decision indicates that the court was of opinion that this is a matter left to the discretion of the General Assembly. In *Murray* v. Charleston, 96 U. S. 432 (24 L. ed. 760), it was held that

a municipal corporation, when it borrows money and promises to repay it with interest, can not, by its own ordinances, under the guise of taxation, relieve itself from performing to the letter all that it has expressly promised to its creditors. An ordinance of the City of Charleston, which authorized the retention of a part of the interest as taxes, was held to be invalid; but the court recognized the fact that after the interest was paid to the holder of the bond, and came into his possession, the money in his possession was subject to taxation in common with other similar property. There is, in the constitution of Louisiana, language similar to that which appears in our present constitution in reference to what property shall be subject to taxation. In the case of State of Louisiana *v.* Board of Assessors, 35 La. An. 651, it was held that the words "all property" were not to be construed as requiring a tax by the State upon bonds issued by one of its municipalities. Fenner, J., after reaching this conclusion, says: "Nor can it be successfully opposed to this view that the words, 'all property shall be taxed,' are too clear and unambiguous to leave room for construction. On the contrary, such general terms and expressions are constantly subjected to construction, and it may be said that they are never allowed their full literal import. To do so would be to extend their intent to subjects which the State has clearly no power to tax, such as bonds of the United States, and other means and instruments for the exercise of the powers delegated to the Federal government; and to other subjects, such as the salaries of judges, public property (though this is expressly exempted), and the like, which, though it is within the power of the State to tax, are yet considered on fundamental principles to be non-taxable." It is true that two judges dissented in this case; but in a later case, State *v.* Board of Assessors, 111 La. 982 (36 So. 91), the conclusions reached in the earlier case were adopted by a unanimous court. The following language, taken from a most valuable work, is in point at this stage of the discussion: "It is well settled, as a general rule, that public property and the various instrumentalities of government, whether, in England and her colonies, appertaining to the crown, or, in the United States, to the Federal government, the various States, or the political subdivisions of the States, are not subject to taxation. This immunity is in almost all jurisdictions confirmed by

some express constitutional or statutory grant of exemption, but it is by no means dependent thereon, for it rests upon the most fundamental principles of government, being necessary in order that the functions of government be not unduly impeded, and that the government be not forced into the inconsistency of taxing itself in order to raise money to pay over to itself, which money could be raised only by other taxation; and the express exemptions are considered to be inserted in the tax laws only from abundant caution, and because the assessment of taxes is made by local officers who, though skilled in the valuation of property, are presumably unlearned in legal distinctions." 12 Am. & Eng. Enc. L. (2d ed.) 367, et seq. There is nothing in the various tax acts, from 1880 down to the present time, which, either in express terms, or by necessary implication, indicates that it was the purpose of the General Assembly to levy a tax for State and county purposes upon the bonds of the State or any of its political subdivisions. Such general terms as "taxable property" appear in these acts, and these terms have been interpreted, as we have seen, not to embrace State bonds, and not to embrace the bonds of a municipality owned by a citizen residing in that municipality. See, in this connection, the opinion of the Hon. John C. Hart, attorney-general, of February 26, 1903. The conclusion reached by us, therefore, is that the municipality being a mere political subdivision of the State, to which is delegated a certain portion of the powers of government, a bond issued by it is merely a governmental instrumentality, that it is not taxable by the force of the constitution itself, and, if taxable at all, it is only so when the General Assembly, either in express terms or in such language that no other conclusion can be reached than that such was the intention of that body. A municipal corporation occupying, for many purposes, the same position as the State, so far as the taxing of its instrumentalities are concerned, is not within the operation of a tax law unless expressly named or there is clear language indicating such an intent. See, in this connection, *Butler* v. *Merritt,* 113 *Ga.* 238 (38 S. E. 751), and cases cited. *Judgment affirmed. All the Justices concur.*